UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ANTHONY T. B.,

                              Plaintiff,

v.                                                           3:18-CV-925(TWD)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF STEVEN R. DOLSON<br>For Plaintiff<br>126 North Salina St., Suite 3B<br>Syracuse, NY 13202 | STEVEN R. DOLSON, ESQ. |
| HON. GRANT JAQUITH<br>United States Attorney<br>For Defendant<br>100 S. Clinton St.<br>PO Box 7198<br>Syracuse, NY 13261-7198 | DANIEL STICE TARABELLI, ESQ.<br>Special Assistant |

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**<u>ORDER</u>**

      Presently before the Court in this action, in which Plaintiff seeks judicial review of an adverse administrative determination by the Commissioner, pursuant to 42 U.S.C. §405(g), are cross-motions for judgment on the pleadings.[1] Oral argument was conducted in connection with those motions on August 16, 2019, during a telephone conference at which a court reporter was

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

present. At the close of argument I issued a bench decision in which, after applying the requisite deferential review standard, I found the Commissioner's determination resulted from the application of proper legal principles and was supported by substantial evidence, and I provided further detail regarding my reasoning and addressing the specific issues raised by the Plaintiff in his appeal. Added to that decision and for clarification, the Court also finds correct legal standards were applied and substantial evidence supports the Administrative Law Judge's ("ALJ") determination that vocational expert testimony was unnecessary because Plaintiff's manipulative limitation of occasional overhead reaching with the left non-dominant hand as set forth in Plaintiff's residual functional capacity had a negligible impact on Plaintiff's ability to perform unskilled light work.

After due deliberation, and based up the Court's oral bench decision, which has been transcribed, is attached to this Order and is incorporated in its entirety by reference herein, it is hereby,

**ORDERED**, as follows:

(1) Defendant's motion for judgment on the pleadings is **GRANTED**;

(2) The Commissioner's determination that Plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is **AFFIRMED**; and

(3) The Clerk is directed to enter judgment, based upon this determination, dismissing Plaintiff's complaint in its entirety.

SO ORDERED.

Dated: August 26, 2019
Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
ANTHONY T. B.,

                      Plaintiff,

vs.                                          18-CV-925

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
------------------------------------------------------x
```

*DECISION* - August 16, 2019

James Hanley Federal Building, Syracuse, New York

HONORABLE THÉRÈSE WILEY DANCKS

United States Magistrate-Judge, Presiding


APPEARANCES (by telephone)

| | |
|---|---|
| For Plaintiff: | STEVEN R. DOLSON, ESQ.<br>Attorney at Law<br>126 North Salina Street<br>Syracuse, New York 13202 |
| For Defendant: | SOCIAL SECURITY ADMINISTRATION<br>Office of Regional General Counsel<br>15 Sudbury Street<br>Boston, MA 02203<br>  BY:  DANIEL STICE TARABELLI, ESQ. |

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

1      THE COURT: So I have before me a request for
2 judicial review of an adverse determination by the Acting
3 Commissioner under 42 U.S.C. Section 405(g).
4      The background is as follows. Plaintiff was born
5 in January 1983 and is currently 36 years old. He was 29
6 years old at the onset of his alleged disability in March of
7 2012. He completed ninth grade and does not have a GED.
8      According to his application he has not engaged in
9 substantial gainful activity since March 25th of 2012. His
10 previous jobs were as a computer technician, mover, clerk,
11 and vacuum motor assembler.
12      In his application for benefits he indicated he has
13 diabetic blindness in the left eye and left shoulder pain and
14 nerve pain. At the hearing plaintiff also testified about
15 his diabetes and his chronic diarrhea as additional disabling
16 issues.
17      The procedural history of this case is as follows.
18 The plaintiff filed for Supplemental Security Income benefits
19 on September 22, 2014. As noted, he alleged an onset date of
20 disability beginning March 25, 2012. The claim was initially
21 denied on January 6, 2015, after which a hearing was
22 conducted by Administrative Law Judge Bruce Fein on July 13,
23 2017. Plaintiff appeared with an attorney at that hearing
24 and testified. There was no vocational expert testimony.
25      ALJ Fein issued a decision on September 5, 2017

1  finding the plaintiff was not disabled.  The Social Security
2  Appeals Council denied review on June 22, 2018, and this
3  district court action was thereafter filed in a timely
4  fashion.
5        ALJ Fein applied the required five-step sequential
6  test for determining disability.  At step one he found
7  plaintiff had not engaged in substantial gainful activity
8  since September 22, 2014.  At step two he concluded that
9  plaintiff suffers from the severe conditions of diabetes
10 mellitus, status-post left rotator cuff tear and chronic
11 diarrhea.  At step three the ALJ concluded that claimant's
12 impairments do not meet or medically equal any of the listed
13 presumptively disabling conditions.  Then after a thorough
14 review of the record evidence, the ALJ determined plaintiff
15 is capable of performing less than a full range of light work
16 with restrictions, including the ability to lift and/or carry
17 20 pounds occasionally and 10 pounds frequently; sit, stand
18 and/or walk six hours in a routine eight-hour workday with
19 normal breaks; and have manipulative limits of occasional
20 overhead reaching with the left non-dominant upper extremity.
21 At step four the ALJ concluded plaintiff was unable to
22 perform past relevant work.  At step five the ALJ applied the
23 Medical/Vocational Guidelines, determined that plaintiff's
24 non-exertional limitations had little or no substantial
25 effect on the occupational base of unskilled light work and

1  concluded that plaintiff was not disabled.

2  As relevant to the time period in question and per
3  the Administrative Record, plaintiff treated with a variety
4  of health care providers, including Roosevelt Hospital in New
5  York City; St. John's Episcopal Hospital in Rockaway,
6  New York; Lourdes Hospital in Binghamton, New York; UHS
7  Primary Care with Dr. Zaidi; Lourdes Center for Family Health
8  with Dr. Azad; and Addabbo Family Health with Dr. Jacob.
9  There are also records from the Federal Bureau of Prisons
10 which predate the relevant time period, and I have not
11 considered them in any detail.

12 Medical source statements are also contained in the
13 Administrative Record and include one signed by treating
14 physician Dr. Azad dated July 11, 2017, and one by examining
15 internist consultant Dr. Jenouri dated December 19, 2014.

16 I've reviewed the record carefully, and in light of
17 the arguments of counsel and what counsel had presented in
18 their briefs, I've applied the requisite deferential standard
19 which requires me to determine whether proper legal
20 principles were applied and whether the result is supported
21 by substantial evidence.

22 First I'll address the issue of whether the opinion
23 of a vocational expert should have been obtained as plaintiff
24 argues.  At step five there is only a limited burden shift to
25 the Commissioner who need only show that there is work in the

national economy that the claimant can do. The Commissioner need not provide additional evidence of the claimant's residual functional capacity. Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions of the country.

Generally the Commissioner meets his burden at the fifth step by resorting to the applicable Medical/Vocational Guidelines, otherwise known as the Grids. The Grids take into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these considerations, the Grids indicate whether the claimant can engage in any substantial gainful work existing in the national economy.

Exclusive reliance on the Grids is inappropriate where the Guidelines fail to describe the full extent of a claimant's physical limitations. The Grids are inapplicable in cases where the claimant exhibits a significant non-exertional impairment. This is where the non-exertional impairment has more than a negligible impact on the claimant's ability to perform the full range of work.

An impairment is non-negligible when it so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity. If a claimant has non-exertional limitations that significantly limit the range

of work permitted by his exertional limitations, the ALJ is required to consult with a vocational expert. A non-exertional limitation is one imposed by the claimant's impairments that affect his ability to meet the requirements of jobs, other than strength demands, and includes manipulative impairments such as reaching, as both parties clearly recognize here. However, the existence of non-exertional limitations does not automatically preclude reliance on the Grids or absolutely require that the ALJ consult a vocational expert.

Where the claimant's non-exertional limitation does not result in an additional loss of work capacity, an ALJ's use of the Grids is permissible. Here I find that the ALJ correctly relied on the Medical/Vocational rules based upon the RFC and the plaintiff's vocational profile. The evidence does not support a showing that plaintiff suffers from non-exertional impairments that significantly limit the range of work permitted by his exertional limitations; therefore, the ALJ was not required to elicit testimony from a vocational expert to determine if jobs exist in the economy that he could still perform.

For example, in the RFC the ALJ found plaintiff to have manipulative limitations of occasional overhead reaching with the left non-dominant upper extremity. In reviewing treatment records regarding plaintiff's left shoulder, it

1  appears plaintiff was seen at St. Joseph's Episcopal Hospital
2  for a left shoulder injury in early October 2012.  Discharge
3  instructions were to take Ibuprofen.  A follow-up progress
4  note of November 6, 2012, although somewhat difficult to
5  read, states that a physical exam revealed strength was good
6  and equal bilaterally and left arm range of motion was
7  without restriction.
8          Plaintiff was seen at Roosevelt Hospital for left
9  shoulder pain on January 30, 2013, and was provided Ibuprofen
10 and Percocet and discharge instructions advised rest and
11 icing of the joint.  Notes from Dr. Jacob of Addabbo Family
12 Health Center in September of 2013 from a visit mainly
13 concerning his diabetes show on the problem list that he has
14 a left shoulder joint strain, but the physical exam shows no
15 deformity or tenderness of the musculoskeletal system and no
16 swelling of extremities.
17         Records from Dr. Zaidi at UHS Primary Care dated
18 April 22, 2014 show his physical exam of the left shoulder to
19 be tender and his range of motion only mildly reduced.  He
20 was referred to physical therapy, but there are no physical
21 therapy notes in the Administrative Transcript.  There are
22 seven treatment encounter notes from Lourdes Center for
23 Family Health from Dr. Azad between October 29, 2015 and
24 March 14, 2017, which noted history of left shoulder injury,
25 but the musculoskeletal exams consistently show normal

1 inspection of joints, normal strength, normal stability and
2 normal range of motion.
3 Various emergency room treatment notes and one
4 admission at Lourdes Hospital between January '15 and
5 July 2017 likewise show full range of motion in extremities
6 and no swelling, tenderness or deformities in the
7 extremities.
8 Regarding the consultative exam of Dr. Jenouri, an
9 X-ray of the left shoulder was negative and examination
10 showed a small reduction in abduction of the left shoulder.
11 However, forward elevation, adduction, internal rotation and
12 external rotation were normal with full range of motion.
13 Plaintiff had a full range of motion of the elbows, wrists
14 and hands bilaterally.  His strength was equal and full in
15 the upper extremities.
16 Dr. Jenouri opined that plaintiff had only a
17 minimal restriction in lifting, carrying and reaching in the
18 left upper extremity.  Treating physician Dr. Azad opined
19 that plaintiff had no significant reaching, handling or
20 fingering limitations.
21 The ALJ cited SSR 85-15 when doing an erosion of
22 the occupational base framework analysis, which I find was
23 proper.  That ruling states that, quote, "Significant
24 limitations of reaching or handling, therefore, may eliminate
25 a large number of occupations a person could otherwise do."

1  Since the medical evidence, as I've cited, shows only mild
2  findings at best regarding the left shoulder and the opinions
3  of record show minimal restrictions or no significant
4  limitations, I find the ALJ's reliance on the Grids was
5  appropriate and remand is not required on this basis.
6  Turning to plaintiff's second argument that the ALJ
7  erred in failing to include a vision limitation in the RFC, I
8  find this argument likewise unpersuasive.  Dr. Jenouri found
9  on exam that plaintiff's pupils were nonreactive to light and
10 opined that plaintiff would be restricted from activities
11 requiring fine visual acuity.  However, the ALJ found this
12 assessment was not supported elsewhere in the records.
13 While a few of the medical records show complaints
14 of blurred vision in the left eye, the vast majority of the
15 records show his pupils to be round, equal and reactive to
16 light and accommodation with extraocular motions intact.  He
17 was provided eye drops in June of 2016 when his left eye was
18 red and he had conjunctivitis, but it was noted he had not
19 had an eye exam for several years, although he is a diabetic.
20 Some of the records show his vision in both eyes to be 20/50.
21 In late May and early June of 2017 when
22 hospitalized for elevated blood sugars, he complained of
23 blurry vision, but no further follow-up was recommended
24 specifically for his eyes other than to follow up with
25 diabetes control.  There are no specific treatment records

1  from any optometrist or ophthalmologist. Thus, I find that
2  the assessment by the ALJ of Dr. Jenouri's opinion regarding
3  plaintiff's vision to be proper.
4  Additionally, as defendant correctly points out,
5  even if the ALJ had incorporated the visual acuity limit
6  opined by Dr. Jenouri, it would not have changed the outcome.
7  This is because SSR 85-15 states that, quote, "Even if a
8  person's visual impairments were to eliminate all jobs that
9  involve very good vision...as long as he or she retains
10 sufficient visual acuity to be able to handle and work with
11 rather large objects (and has the visual fields to avoid
12 ordinary hazards in a workplace), there would be a
13 substantial number of jobs remaining across all exertional
14 levels."
15 Here the record shows plaintiff testified that he
16 stayed home and watched TV, he read books, he went on the
17 internet, and he socialized with family. His mother helps
18 him with cooking, cleaning and shopping sometimes, but he
19 reported that is because he becomes fatigued. He also
20 reported to Dr. Jenouri that he could take care of his
21 personal hygiene and he socialized with friends.
22 Thus, those activities of daily living, coupled
23 with the medical records, I find that any alleged preclusion
24 from work due to restrictions from activities requiring fine
25 visual acuity would not affect the occupational base, and,

1  therefore, the ALJ's determination need not be overruled.
2          Accordingly, in light of the foregoing and
3  considering the entire record and the ALJ's determination, I
4  find that the ALJ applied the appropriate legal standards of
5  review and his determination that the plaintiff is not under
6  a disability is supported by substantial evidence.  So I
7  grant defendant's motion for judgment on the pleadings and I
8  will enter a judgment dismissing plaintiff's complaint in
9  this action.
10         A copy of the transcript of my decision will be
11 attached to the order should any appeal be taken from my
12 determination.
13                  *              *              *

C E R T I F I C A T I O N

      I, EILEEN MCDONOUGH, RPR, CRR, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of New York, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

_____
EILEEN MCDONOUGH, RPR, CRR
Federal Official Court Reporter